IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ROBYN G. EDWARDS and MIKKI ADAMS | * * | |
| PLAINTIFFS | * * | |
| V. | * * * | CASE NO. 4:15CV00571 SWW |
| GENE SALTER PROPERTIES and BRITTANY PRINGLE | * * | |
| DEFENDANTS | * * | |

## OPINION AND ORDER

Plaintiffs Robyn G. Edwards ("Edwards") and Mikki Adams ("Adams"), proceeding *pro se* and *in forma pauperis*, bring this action under the Fair Housing Act ("FHA") against Gene Salter Properties, Inc. ("Salter Properties"), Salter Construction, Inc. ("Salter Construction") and Brittany Pringle ("Pringle"), claiming that Defendants discriminated against them by denying their applications to rent an apartment. Before the Court are cross-motions for summary judgment: Plaintiffs' motion for summary judgment [ECF No. 46] and Defendants' response in opposition [ECF Nos. 47, 48, 49] and Defendants' motion for summary judgment [ECF Nos. 50, 51, 52].[1] After careful consideration, and for reasons that follow, Plaintiffs' motion is denied, and Defendants' motion is granted.

---

[1] The time for filing a response to Defendants' motion has expired, and Plaintiffs have not responded.

1

**I.**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

**II.**

The following facts are undisputed.[2] Salter Properties manages Brentwood Apartments ("Brentwood") in Conway, Arkansas, and Pringle worked for the company as

---

[2] Local Rule 56.1 provides that any party moving for summary judgment "shall annex to the notice of motion a separate, short and concise statement of material facts as to which it contends there is no genuine dispute to be tried." Local Rule 56.1(a). Likewise, a nonmoving party that opposes the motion, "shall file, in addition to any response and brief, a separate short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." Local Rule 56.1(b). "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . . " Local Rule 56.1(c).

a property manager. Salter Properties' rental policy requires that rental applicants demonstrate the ability to pay rent. If an applicant receives income, he or she must list the amount and source of income and submit one of three forms of documentation: tax returns, check stubs, or a letter offering employment. If an applicant is unable to provide such documentation, he or she has the option of obtaining a co-signer or paying a six or twelve month lease term in advance.

As property manager, Pringle collected rental applications and supporting documents, and she had no discretion to deviate from her employer's income verification policy without permission from an upper-level manager. When Pringle received an application, her task was to enter the information to a software program that would process the data and approve or deny the application. Pringle would then communicate the decision to the applicant.

Adams and Edwards are mother and daughter. In July 2015, Edwards completed an online rental application for a Brentwood apartment that she and Adams planned to share. At the time, neither Edwards nor Adams had a job, but Edwards received social security disability and rental income, and Adams received social security retirement income. After Pringle received Plaintiffs' application, she instructed Edwards to send a copy of her most recent income tax returns to verify her income. Edwards replied that neither she nor her mother had any "IRS/Tax information to report." Edwards wrote: "To verify our income, however, I sent our Social Security Administration

documentation . . . in addition to a copy of the lease agreement between myself and the tenant who . . . pays $1,000 a month."[3] Pringle responded as follows:

> I apologize[;] we aren't able to qualify you based on income information you have provided. There are three types of income verification that we are able to accept: pay stubs, a letter of intent/offer letter, or tax returns. You have the option to have a qualified guarantor (co-signer) or pay the full lease term up front. [I]f you are not interested in either option, we wouldn't be able to approve the application. Please, let me know if you have any questions.[4]

Edwards then telephoned Pringle and offered to provide bank statements as proof of income, but Pringle repeated Salter Properties' income verification policy. In deposition, Edwards recalled her reaction: "I just said, okay, fine. There's nothing else I can do. And I called to get my $60 back from Pay Lease."[5]

On September 14, 2015, Edwards and Adams commenced this FHA discrimination action *pro se*, charging that Defendants rejected their rental applications because Edwards is an individual with a disability. The Court granted Defendants' motion to dismiss, finding that whether Plaintiffs proceed under a disparate treatment, disparate impact, or failure to accommodate theory, they failed to state a plausible discrimination claim. On appeal, the Eighth Circuit agreed that Plaintiffs failed to allege disparate treatment or disparate impact, but it concluded that Plaintiffs sufficiently alleged that defendants violated the FHA by failing to make a reasonable accommodation necessary to afford them the equal opportunity to rent an apartment.

---

[3] ECF No. 3, at 6.
[4] ECF No. 3, at 5.
[5] ECF No. 50-4, at 21.

# III.

**Plaintiffs' Motion for Summary Judgment**

The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any ... renter because of a handicap." 42 U.S.C. § 3604(f)(1). Discriminatory conduct prohibited under the FHA includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling[.]"
42 U.S.C. § 3604(f)(3)(B).

To merit summary adjudication in their favor, Plaintiffs must show that there is no factual dispute as to any element of their claims, and they bear the initial burden to inform the Court of the basis for their motion. To succeed with an FHA failure to accommodate claim, a plaintiff must show among other things that she or her associate is handicapped within the meaning of the FHA and that the requested accommodation was reasonable and necessary. *See King's Ranch of Jonesboro, Inc. v. City of Jonesboro,* No. 3:10CV00096 JLH, 2011 WL 1544697 (E.D. Ark. April 25, 2011)(citing *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006)(citing 42 U.S.C. § 3604(f)(3)(B)). Here, Plaintiffs offer no more than the complaint allegations to support their motion, and they argue that it is "obvious" that "some of Defendants' housing rules and regulations, such as which resulted in this lawsuit, are clearly

discriminatory and out of compliance with the Fair Housing Act." [6] Plaintiffs have failed to make the showing required for summary judgment in their favor.

**Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on several grounds. First, they note that Adams has conceded that she is not handicapped within the meaning of the FHA. However, the FHA affords a private cause of action to any "aggrieved person," *see* 42 U.S.C. § 3613(a)(1)(A), and an "aggrieved person" includes a person such as Adams, who claims to have been injured by a discriminatory housing practice.

Second, Defendants assert that Plaintiffs are unable to show that the requested accommodation--that is, granting an exception to Salter Properties' income-verification policy--was necessary. [7] The FHA imposes a duty to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations *may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling*[.]" 42 U.S.C. § 3604(f)(3)(B)(emphasis added). Not every rule or policy that causes inconvenience or expense to a handicapped person gives rise to a duty to accommodate. "Instead, the statute requires only accommodations necessary to ameliorate the effect of the plaintiff's disability so that she may compete equally with the non-disabled in the

---

[6] ECF No. 46, at 3.
[7] Consistent with the plain language of the FHA, Plaintiffs must show that the requested accommodation was both reasonable and necessary. *See King's Ranch of Jonesboro, Inc. v. City of Jonesboro,* No. 3:10CV00096 JLH, 2011 WL 1544697, at *4–5 (E.D. Ark. Apr. 25, 2011)(citing *Developmental Servs. of NE v. City of Lincoln*, 504 F.Supp.2d 714, 723 (D. Neb.2007)(quoting *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir.2004)). Defendants do not contend that Plaintiffs are unable to show that the requested accommodation was reasonable, and in remanding this case, the Eighth Circuit explained, "Plaintiffs may be able to show that the requested accommodation was reasonable, even if the inability to comply with defendants' policy for documenting income was not caused by Edwards's handicap." *Edwards v. Gene Salter Properties*, No. 16-2179, 671 F. App'x 407, 408 (8th Cir. 2016)(citing *US Airways, Inc.v. Barnett*, 535 U.S. 391, 398 (2002)).

housing market." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006). Put another way, an accommodation is necessary only if there is a causal connection between the handicap and the requested accommodation. *See Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004)(citing U*.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02, 122 S. Ct. 1516, 1523 (2002); *see also King's Ranch,* 2011 WL 1544697, at *4-6.

A person has a "handicap" under the FHA if she has a physical or mental impairment that substantially limits one or more of her major life activities. *See* 42 U.S.C. 3602(h). In this case, it is difficult to assess whether the requested accommodation would ameliorate the effect of Edward's handicap because Plaintiffs offer no information about Edwards's specific impairment and its effect a major life activity. Edwards's receipt of social security disability benefits is relevant to whether she is substantially limited in the major life activity of working, but it is not conclusive. *See Jobst v. Camelot Village Ass'n, Inc*., 94 Fed. Appx. 356, 357 (7th Cir. 2004).

Even assuming that Edwards has a physical or mental impairment that substantially limits the major life activity of working, Plaintiffs do not argue and present no evidence to show that the requested modification of Salter-Properties' income-verification policy would have mitigated the effects of Edwards's handicap and achieved the goal of providing her equal opportunity in the housing market. Defendants note that Edwards's testimony indicates that she refused to consider the option of obtaining a

7

cosigner, which would have negated the need for an accommodation.[8] In deposition, when asked about the co-signer option, Edwards testified:

> Why—why [we have gone] to several other places and applied and [were] never . . . required to have a co-signer. . . . Why should we have to jump through hoops[?] When can't they look and see, you know, okay, you know, these—this is your—these are your previous landlords. And we'll call them. We'll see.
>
> To be honest with you, I don't know anybody, I mean, not personally that I would want to consider or call to ask them, him or her to be a co-signer for me. I don't know anybody really who could ever qualify for that.
>
> My son makes really good money. He works for . . . a governmental contractor. He makes good money. But, unfortunately, his credit is not such that he can co-sign for me. And he's probably one of the only people that I would even consider asking. Asking people to co-sign is - - that's a lot of responsibility. And I wouldn't do it.
>
> So when I saw that, I said, okay, fine. I don't know anybody—that's not an option for me. As well as paying all the rent up front for a year. That's not an option. So that's why I just said, okay, you know, Robyn, move on. Get your 60 bucks back. Find another place to live.[9]

Plaintiffs offer no arguments or evidence indicating that Edwards's handicap prevented her from complying with Salter Properties' income-verification policy. Accordingly, the Court finds no issues for trial as to whether a modification of the policy was necessary to afford Edwards an equal opportunity to use and enjoy a Brentwood apartment, and Defendants are entitled to summary judgment.

---

[8] In a related argument, Defendants argue that "Edwards's request for an exception to providing tax returns was not related to her purported handicap; instead it was due to her failure to file tax returns." ECF No. 51, at 16. However. Edwards's rental income was only a portion of the income she reported on her rental application, and Defendants do not claim that a tax return reporting the rental income would have satisfied Salter Properties' income verification policy.
[9] ECF No. 50-4, at 24-25.

Third, Defendants maintain that Plaintiffs failed to engage in a good-faith, interactive process to determine whether a reasonable accommodation was necessary or possible. Under the Americans with Disabilities Act ("ADA"), an employer's obligation to provide a reasonable accommodation is determined through an "'informal, interactive process between the employer and the employee, identifying the limitations arising from the disability and potential reasonable accommodations that could overcome those limitations.'" *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002)(quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir.1999) (quoting 29 C.F.R. § 1630.2(o)(3)). An employer's failure to engage in the interactive process, which is triggered by an employee's affirmative request for accommodation, is evidence of bad faith. However, an employer is not responsible for failing to provide a reasonable accommodation where the employee impedes the interactive process by failing to cooperate. *See Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005)(finding employer not responsible for failing to provide reasonable accommodation where employee refused to provide updated information about her restrictions after she agreed to do so).

Here, Defendants argue that they are entitled to judgment as a matter of law because Plaintiffs "did not even begin to participate in a good-faith interactive process with Salter Properties . . . ."[10] The Court disagrees. Assuming that the FHA requires the parties to engage in the interactive process, an open question in this Circuit, the record is

---

[10] ECF No. 51, at 18.

void of evidence that Plaintiffs impeded Defendants' ability to engage in an interactive process.

Fourth, Pringle asserts that she is entitled to judgment as a matter of law because she had only a ministerial role in carrying out Salter Properties' income-verification policy and she had no discretion to grant exceptions. The Court agrees. In light of the undisputed facts regarding Pringle's involvement in the application process, there are no issues for trial regarding Pringle's liability.

Fifth, Salter Construction asserts that it is entitled to judgment as a matter of law because it had no personal involvement in any issues before the Court. Salter Construction correctly notes that the complaint is void of allegations concerning conduct on its part, and the company has submitted evidence showing that it is an entity separate from Salter Properties and has no involvement in property management.[11] The Court finds no genuine issues regarding any possible liability on the part of Salter Construction.

Sixth, in addition to seeking summary judgment on the merits, Pringle seeks dismissal for insufficient process and insufficient service of process.[1] A *pro se* plaintiff proceeding *in forma pauperis* bears the responsibility to provide a proper address for service of the summons and complaint. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir. 1993). Accordingly, by order entered October 5, 2015, the Court informed Plaintiffs that they shouldered the responsibility to provide an address for service for each

---

[11] ECF No. 50-1 (Brent Salter Dec.).
[1] Motions for dismissal under Federal Rule of Civil Procedure 12(b)(5) concern the proper procedure for serving the summons and complaint and challenge the mode or lack of delivery of the summons and complaint, and motions for dismissal under Rule 12(b)(4) challenge the content of the summons.

defendant. Subsequently, Plaintiffs filed a motion for service and provided Brentwood Apartments as Pringle's mailing address, and the Court directed the United States Marshal to serve Pringle at the address provided.

By affidavit, Pringle reports that copies of the summons and complaint were mailed to the Brentwood Apartments after her employment with Salter Properties ended and that the attempted service did not satisfy Rule 4 of the Federal Rules of Civil Procedure. The undisputed record shows that Pringle was never served a copy of the complaint and summons as required under Rule 4.[12] However, given Plaintiffs' *pro se* status,[13] if the Court had denied Defendants' motion for summary judgment, it would have afforded Plaintiffs an opportunity to show good cause for the failure to timely serve Pringle, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Accordingly, the Court declines to dismiss the claims against Pringle on the basis of insufficient service of process.

**IV.**

For the reasons stated, Plaintiffs' motion for summary judgment [ECF No. 46] is DENIED, and Defendants' motion for summary judgment [ECF No. 50] is GRANTED.

---

[12] Federal Rule of Civil Procedure 4(e) provides that service of process on an individual must be made by following state law for service of process or by delivering the summons and complaint to the individual or her agent for service personally or by leaving the papers at the individual's dwelling with someone of suitable age. Arkansas allows for service of process "by any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee of the agent of the addressee." Ark. R. Civ. P. 4(d)(8)(A)(i).

[13] Because Plaintiffs proceed in this case *pro se* and *in form pauperis*, the Court directed the United States Marshal to serve Pringle a copy of the complaint and summons at the address provided by Plaintiffs. , but it was Plaintiffs' obligation to provide the proper address for service, and they failed to do so.

Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 6TH DAY OF DECEMBER, 2017.

/s/ Susan Webber Wright
UNITED STATES DISTRICT JUDGE