IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ROBYN G. EDWARDS and MIKKI ADAMS<br>PLAINTIFFS | * * * * | |
| V. | * * * | CASE NO. 4:15CV00571 SWW |
| GENE SALTER PROPERTIES<br>DEFENDANT | * * * * | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Mikki Adams ("Adams") and Robyn G. Edwards ("Edwards") filed this action *pro se* action against Gene Salter Properties ("Salter Properties") and others, charging that defendants discriminated against them in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619. The resolution of pretrial motions and the Eighth Circuit's decisions remanding the case in two separate appeals leave one claim for resolution: Plaintiffs' claim that Salter Properties failed to accommodate Edwards's handicap in violation of the FHA. The case proceeded to a bench trial on June 3, 2019. The Court now reaffirms and augments findings of fact and conclusions of law stated from the bench in accordance with Rule 52 of the Federal Rules of Civil Procedure and enters judgment in Plaintiffs' favor, awarding $1,380 in damages.

**I.**

Edwards suffers from Duane retraction syndrome, a congenital disorder that does not affect her vision but prevents her from controlling movement of her left eye. An only

1

child, Edwards grew up in a Chicago housing project, where children, and sometimes adults, verbally and physically abused her and ridiculed her eye disorder.  Because of the bullying she endured, Edwards developed anxiety and anger issues and was eventually diagnosed with posttraumatic stress disorder ("PTSD").

Edwards functions best with a regimented routine, and she prefers solitude over the company of others.  After high school, Edwards enlisted in the United States Army.  As she explains it, she joined the army because she "wanted to shoot and kill people."  During her military career, Edwards strove to stand out and prove herself.  She earned the rank of second lieutenant and became the first female in her company to serve as a guidon bearer.  After becoming a commissioned officer, Edwards married three times, worked hard, and raised her children.

Although Edwards succeeded in the military, such was not the case in the civilian workforce, as she testified that she has held 46 civilian jobs,  She held multiple jobs that would end when she became enraged with people with whom she worked.  Her favorite job was part of a federal program that involved helping people achieve homeownership.  She enthusiastically gave homeownership classes and made suggestions to improve the program, but her supervisor rejected her ideas.  On one occasion, Edwards's supervisor stood with his back to a window and yelled at her.  She recalled that a voice inside her told her to push him out the window, but she resisted the very strong urge to follow through and ran out of the office exclaiming, "I want all of you all dead."  After losing her job, Edwards sought help for PTSD.  She received counseling through the Veterans Administration for a period, but because her condition was not combat related, the

assistance ended.  Edwards then applied for Social Security Disability Income benefits ("SSDI"), which she began receiving in October 2010.  Since that time, Edwards has not had a paying job but has completed administrative tasks for her son's business.  Edwards lives with her mother, Plaintiff Millie Adams, but otherwise avoids interacting with people.  She reports that such social isolation is the best medicine for her.

In 2015, Edwards and Adams lived in Washington, D.C. and decided to leave the cold climate and move to Arkansas.  After an extensive online search for suitable housing, Edwards applied for an apartment at the Brentwood Apartments ("Brentwood") in Conway, Arkansas.  Defendant Salter Properties manages Brentwood, and Bridget Pringle worked as the Brentwood property manager when Edwards submitted the application.  Neither Edwards nor Adams were employed at the time, but Edwards received SSDI payments and rental income, and Adams received social security retirement income.  After Pringle received Edwards's application, she instructed her to send a copy of her most recent income tax returns to verify her income.  Edwards replied via email that neither she nor her mother had any "IRS/Tax information to report." Edwards wrote:

> To verify our income, however, I sent our Social Security Administration documentation showing her retirement and my disability; in addition to a copy of the lease agreement between myself and the tenant who lives at my property in Texarkana, TX, and pays $1,000.00 a month.[1]

Pringle responded:

> I apologize[;] we aren't able to qualify you based on income information you have provided.  There are three types of income verification that we are able

---

[1] ECF No. 3, at 6.

to accept: pay stubs, a letter of intent/offer letter, or tax returns.  You have the option to have a qualified guarantor (co-signer) or pay the full lease term up front.  [I]f you are not interested in either option, we wouldn't be able to approve the application.  Please, let me know if you have any questions.[2]

Edwards telephoned Pringle and offered to provide bank statements as proof of income, but Pringle repeated Salter Properties' income-verification policy.  Consistent with her practice of avoiding opposition and confrontation, Edwards made no further requests that Salter Properties make an exception and accept the receipt of SSDI payments, retirement benefits, and rental income as proof of income.  Edwards and Adams then obtained an apartment at Lake Pointe in Conway and moved in on September 3, 2015, which allowed them to move to Arkansas before the weather turned cold in Washington, D.C.  The two-bedroom, one-bathroom apartment that Edwards and Adams share is smaller than the two- bedroom, two-bathroom, Brentwood apartment they had applied, but aside from space issues, they are happy living at Lake Pointe.

## II.

The FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling because of race, color, religion, sex, handicap, or familial status.  42 U.S.C. § 3604.  Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3404(f)(3)(B).  "If the court finds that a discriminatory housing practice has occurred or is about to occur, the court may

---

[2] ECF No. 3, at 5.

award to the plaintiff actual and punitive damages and . . . may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate). 42 U.S.C.A. § 3613. In this case, Edwards and Adams claim that Salter Properties failed to accommodate Edwards's disability in the rental application process by refusing to verify their receipt of income with documentation of SSDI payments, retirement benefits, and rental income.[3]

To succeed with an FHA failure-to-accommodate claim, a plaintiff must prove the following by a preponderance of the evidence: (1) the plaintiff (or her associate) suffers from a "handicap" as defined under 42 U.S.C. § 3602(h); (2) the defendant knew or reasonably should have known of the handicap; (3) the requested accommodation may be necessary to afford the plaintiff an equal opportunity to use and enjoy the housing involved; (4) the requested accommodation is reasonable; and (5) the defendant refused to make such an accommodation. *Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1037 (D.N.D. 2011)(citing *Astralis Condominium Ass'n v. Sec'y, U.S. Dept. of Housing & Urban Development,* 620 F.3d 62, 67 (1st Cir.2010); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua,* 453 F.3d 1175, 1179 (9th Cir.2006)).

---

[3]Adams does not allege that she has a handicap. However, the Fair Housing Act affords a private cause of action to any "aggrieved person," *see* 42 U.S.C. § 3613(a)(1)(A), and an "aggrieved person" includes a person such as Adams, who claims to have been injured by a discriminatory housing practice.

Plaintiffs have met their burden to satisfy all five elements. First, a person has a "handicap" under the FHA if she has (1) a physical or mental impairment that substantially limits one or more of her major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment. *See* 42 U.S.C. 3602(h). "Major life activities" include such functions as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 24 C.F.R. § 100.201(b). "Mental impairment" includes any mental or psychological disorder, including emotional or mental illness. *See* 24 C.F.R. § 100.201(b). The Court finds that Edwards's qualification for SSDI benefits and her own credible testimony detailing her anger issues and inability to function in the workplace shows that she suffers from a mental impairment that substantially limits her in the life activity of working.

Second, the Court finds that Edwards's rental application and email communications with Pringle would alert a reasonable person that Edwards received SSDI benefits and suffered from a disability. Third and fourth, as the Eighth Circuit concluded in its most recent opinion reversing and remanding this case, Edwards's requested accommodation, that Salter Properties make an exception to its income-verification policy, was necessary and reasonable. *Edwards v. Gene Salter Properties & Salter Constr. Inc.*, 739 F. App'x 357, 358 (8th Cir. 2018), *cert. denied sub nom. Edwards v. Gene Salter Properties*, 139 S. Ct. 1271, 203 L. Ed. 2d 286 (2019)("We conclude that allowing a co-signer or prepaying the full lease term were not substitutes for accommodating plaintiffs, who had sufficient income to rent the apartment, because those options did not level the playing field but instead posed an additional burden on the

6

disabled applicant."). Fifth, it is undisputed that Salter Properties refused Edwards's request for an accommodation.

Having determined that Salter Properties violated the FHA by denying Edwards an accommodation that was reasonable and necessary for an equal opportunity to use and enjoy a dwelling, the Court must determine damages. Edwards testified that she and Adams are content at Lake Pointe, and the Court finds no basis for finding emotional damages or that Salter Properties acted in bad faith. The only tangible damage that Edwards and Adams suffered was the deprivation of a larger apartment that has two bathrooms. Edwards and Adams pay $505 per month to live at Lake Pointe, and the monthly rent for the larger Brentwood apartment is $620. Assuming a one-year lease, the Court finds Edwards and Adams suffered damages in the amount of the difference in rent between the Brentwood and Lake Pointe apartments for a 12-month period, or $1,380.

**III.**

Pursuant to the foregoing findings and fact and conclusions of law, judgment shall be entered in Plaintiffs' favor for $1,380.

IT IS SO ORDERED THIS 27TH DAY OF JUNE, 2019.

                                            /s/Susan Webber Wright
                                            UNITED STATES DISTRICT JUDGE